**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| DANI SIMIEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:20-CV-131 |
| | § | |
| C. R. BARD, INC. and BARD | § | |
| PERIPHERAL VASCULAR, INC., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc.'s (collectively, "Bard") Motion to Dismiss and, Alternatively, Motion to Strike and for More Definite Statement (#15). Plaintiff Dani Simien ("Simien") responded. Having considered the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motion should be granted in part.

I.    <u>Background</u>

Bard manufactures and markets medical equipment, specializing specifically in vascular and surgical products. One type of product that Bard manufactures is known as an inferior vena cava ("IVC") filter. IVC filters are small metal devices that are implanted in the upper portion of the IVC—a large vein that transports de-oxygenated blood from the lower body back to the heart. These IVC filters are designed to stop blood clots from traveling to the heart and lungs. When a blood clot reaches the heart or lungs, it is deemed to be a pulmonary embolism, which can cause serious injury or death.

Originally, IVC filters were designed to be permanent once implanted; however, in 2003, the Food and Drug Administration ("FDA") granted Bard clearance to market an IVC filter that was retrievable using Bard's Recovery Cone Removal System.   Bard has since designed and marketed several variations of this retrievable IVC filter, including the G2 filter[1]—the subject of this litigation—which was introduced in 2005.  IVC filters are umbrella-shaped devices that use hooks to attach to the IVC wall and then catch or break-up blood clots using shorter, curved arms.

This case was part of a Multi-District Litigation proceeding, *In re: Bard IVC Filter Litigation*, 2:15-md-02641-DGC, that is pending before Senior District Judge David Campbell of the District of Arizona (the "MDL"), and comes before this court after being transferred from the United States District Court of Arizona pursuant to 28 U.S.C. § 1404(a).   On May 28, 2019, Simien joined the ongoing MDL action against Bard in the District of Arizona as one of more than 3,000 plaintiffs seeking damages for personal injuries.  Simien's case was remanded to this court on March 31, 2020.

On May 12, 2020, the court held a teleconference with counsel for the parties and directed Simien to file an amended complaint that laid out the facts and claims specific to his lawsuit.  On May 18, 2020, Simien filed an Amended Complaint, which alleges that on May 1, 2007, he was implanted with a defective and unreasonably dangerous G2 filter manufactured by Bard and that the filter perforated his caval wall and caused him to sustain personal injuries as a direct and proximate result of the filter's alleged defects.   Simien brings claims for:   Strict Products Liability – Manufacturing Defect (Count I); Strict Products Liability – Information Defect (Count

---

[1] Simien's Amended Complaint includes multiple references to a "02" IVC filter.  The court assumes that these are typographical errors and that Simien intended to refer to "G2," rather than "02."

II); Strict Products Liability – Design Defect (Count III); Negligence – Design (Count IV); Negligence – Manufacture (Count V); Negligence – Failure to Recall/Retrofit (Count VI); Negligence – Failure to Warn (Count VII); Negligent Misrepresentation (Count VIII); Negligence Per Se (Count IX); Breach of Express Warranty (Count X); Breach of Implied Warranty (Count XI); Fraudulent Misrepresentation (Count XII); Fraudulent Concealment (Count XIII); and Violations of the Texas Deceptive Trade Practices Act ("DTPA") (Count XIV).

On May 26, 2020, Bard filed the instant motion, arguing that:  (1) Simien's Amended Complaint fails to allege sufficient facts specific to Simien's case and thus is an impermissible pleading under Rule 8(b) and 12(b)(6); (2) federal law preempts Simien's claims; (3) Simien's claims of fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation should be dismissed because they do not meet the heightened pleading standard under Rule 9(b); (4) Simien's claims of breach of express and implied warranty fail because Simien did not provide Bard with the requisite pre-suit notice, and the Amended Complaint fails to allege privity between Simien and Bard; (5) Simien cannot recover for his personal injuries under the DTPA; (6) Simien's claim for Negligence – Failure to Recall/Retrofit fails because Texas does not recognize a post-sale duty to warn or recall defective products; and (7) Simien fails to state a claim upon which punitive damages can be awarded.  Alternatively, Bard's motion requests that the court strike certain immaterial and prejudicial allegations relating to products not at issue in Simien's case and order Simien to provide a more definite statement.

On June 9, 2020, Simien filed his Response (#16) to Bard's motion in which he agrees that his claims for Failure to Recall/Retrofit (Count VI), Breach of Express Warranty (Count X), and Breach of Implied Warranty (Count XI) have no basis in Texas law and should be dismissed.

Simien's Response opposes the remainder of Bard's motion.  On June 16, 2020, Bard filed a Reply (#17) in which Bard withdraws its federal preemption argument and reinforces its arguments that: Simien's pleading fails to meet the pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b); Simien's DTPA claim should be dismissed; Simien is not entitled to punitive damages; and the allegations regarding products other than the G2 filter are immaterial to Simien's case and should be stricken.

As discussed previously, Simien agrees that his causes of action for Failure to Recall/Retrofit (Count VI), Breach of Express Warranty (Count X), and Breach of Implied Warranty (Count XI) should be dismissed.  Thus, to the extent Bard's motion requests that Counts VI, X, and XI be dismissed, its motion is granted as unopposed.  Further, the court recognizes Bard's federal preemption arguments as withdrawn.  The court now considers Bard's remaining arguments in the pending motion.

II.    Analysis

    A.    Motion to Dismiss Standard Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"); *Wilson v. Houston Cmty. Coll. Sys.*, 955 F.3d 490, 495 (5th Cir. 2020); *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d

339, 345 (5th Cir. 2020); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019). "[It] is not a procedure for resolving contests about the facts or the merits of a case." *Stanfield v. Boston Sci. Corp.*, 166 F. Supp. 3d 873, 877 (S.D. Tex. 2015); 5B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2019). In ruling on such a motion, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. *Hernandez v. Mesa*, ___ U.S. ___, 137 S. Ct. 2003, 2005 (2017); *Houston Cmty. Coll. Sys.*, 955 F.3d at 495; *IberiaBank Corp.*, 953 F.3d at 345 (citing *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)); *Walker*, 938 F.3d at 735. The court, however, does not "strain to find inferences favorable to the plaintiff[]" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.,* 365 F.3d 353, 361 (5th Cir. 2004).

"[T]he plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming*, 281 F.3d at 161 (citing *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989)). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Davis v. Tex. Health & Human Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker*, 938 F.3d at 734 (quoting *Iqbal*, 556 U.S. at 678). Hence, "a complaint's allegations 'must make relief plausible, not merely

conceivable, when taken as true.'" *Id.* (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) ("Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material to 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).

A Rule 12(b)(6) motion to dismiss must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. *Twombly*, 550 U.S. at 555. Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *accord IberiaBank Corp.*, 953 F.3d at 345 (quoting *Iqbal*, 556 U.S. at 678); *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 559 (5th Cir. 2015); *Leal*, 731 F.3d at 410; *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 567 U.S. 936 (2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *accord Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 734 (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations that are 'merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief,' and thus are inadequate." *Id.* "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *Gibson v. Tex. Dep't. of Ins.–Div. of Workers' Comp.*, 700 F.3d 227, 233 (5th Cir. 2012).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *Shaw*, 981 F.3d at 419.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *Shaw*, 981 F.3d at 419.  In other words, to state a cognizable cause of action, the complaint must allege sufficient facts to "nudge" the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *Leal*, 731 F.3d at 410; *see Walker*, 938 F.3d at 734 (quoting *Grubbs*, 565 F.3d at 186).

B.   Heightened Pleading Standard Under Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure provides that in order to state a claim for fraud in federal court, the plaintiff must state with particularity the circumstances constituting the fraud.  *See* FED. R. CIV. P. 9(b); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007); *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d 229, 235 (5th Cir. 2020); *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imps., Inc.*, 935 F.3d 424, 429 (5th Cir. 2019); *Neiman v. Bulmahn*, 854 F.3d 741, 746 (5th Cir. 2017).  Specifically, Rule 9(b) states:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b); *see Tellabs, Inc.*, 551 U.S. at 319; *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429; *IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018).  Therefore, instead of the "short and

plain statement of the claim" required by Rule 8(a) of the Federal Rules of Civil Procedure, Rule 9(b) imposes a heightened standard of pleading for averments of fraud. *See* FED. R. CIV. P. 8(a), 9(b); *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *Mun. Emps.' Ret. Sys. of Mich.*, 935 F.3d at 429. A party must plead, at the minimum, the "who, what, when, where, and how of the alleged fraud." *In re Sherwin Alumina Co., L.L.C.*, 952 F.3d at 235; *United States ex rel. Colquitt v. Abbott Labs.*, 858 F.3d 365, 371 (5th Cir. 2017).

"This higher standard of pleading stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) (citing *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir. 1972)); *Ocoro v. Montelongo*, No. 5:16-cv-01278-RCL, 2018 WL 3040582, at *3 (W.D. Tex. June 19, 2018); *Halprin v. Fed. Deposit Ins. Corp.*, No. 5:13-CV-1042-RP, 2016 WL 5718021, at *3 (W.D. Tex. Sept. 30, 2016). In fact, the requirements of Rule 9(b) serve several purposes:

> to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation.

*Civelli v. J.P. Morgan Chase Sec., LLC*, No. CV H-17-3739, 2018 WL 8755508, at *3 (S.D. Tex. Oct. 11, 2018); *Green v. AmerisourceBergen Corp.*, No. 4:15-CV-379, 2017 WL 1209909, at *4 (S.D. Tex. Mar. 31, 2017).

The United States Court of Appeals for the Fifth Circuit applies Rule 9(b) to fraud complaints "with 'bite' and 'without apology'" but also recognizes that Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading." *Grubbs*, 565 F.3d at 185 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997)); *see IAS Servs. Grp., L.L.C.*, 900 F.3d at 647. Therefore, Rule 9(b) "requires only simple, concise, and

direct allegations of the 'circumstances constituting fraud,' which after [*Twombly*, 550 U.S. at 563] must make relief plausible, not merely conceivable, when taken as true." *Grubbs*, 565 F.3d at 186.  Generally, "to state a claim for fraud, a plaintiff must plausibly plead facts establishing 'the time, place and contents of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *IAS Servs. Grp., L.L.C.*, 900 F.3d at 647 (quoting *Grubbs*, 565 F.3d at 186); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir.) (noting the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." (quoting *WMX Techs., Inc.*, 112 F.3d at 177)), *cert. denied*, 558 U.S. 873 (2009).

Moreover, the elements required by Rule 9(b) must be pleaded "*before* access to the discovery process is granted." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (quoting *WMX Techs., Inc.*, 112 F.3d at 178); *accord Grubbs*, 565 F.3d at 185; *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).  Rule 9(b) does not permit a party to make conclusory allegations and then, through the discovery process, gain more specific information and amend his pleadings to satisfy the particularity requirement. *Tchuruk*, 291 F.3d at 349; *WMX Techs., Inc.*, 112 F.3d at 178.  If a complaint fails to meet the pleading requirements of Rule 9(b), it must be dismissed. *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002); *Tchuruk*, 291 F.3d at 350.  Under Fifth Circuit precedent, a dismissal for failure to plead fraud with particularity is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Shandong Yinguang Chem. Indus. Joint Stock*

*Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010); *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 206; *Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

As with fraud and fraudulent misrepresentation, "[c]laims alleging violations of the DTPA are subject to the requirements of Rule 9(b)." *Patel v. Holiday Hosp. Franchising, Inc.*, 172 F. Supp. 2d 821, 825 (N.D. Tex. 2001); *see, e.g.*, *Lester v. Unitrin Safeguard Ins. Co.*, No. 4:20-CV-404-A, 2020 WL 4583839, at *3 (N.D. Tex. Aug. 10, 2020) (stating that courts "routinely apply Rule 9(b)'s heightened pleading standard" to claims alleging violations of the DTPA); *Lopez v. United Prop. & Cas. Ins. Co.*, 197 F. Supp. 3d 944, 951 (S.D. Tex. 2016) ("In federal court, claims under the [DTPA] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (dismissing plaintiff's DTPA claims for failing to comply with Rule 9(b)). While the language of Rule 9(b) refers specifically to fraud, "the requirements of [Rule 9(b)] apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998) (quoting *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 283 (D. Del. 1993) (analyzing the application of Rule 9(b) to the DTPA)); *accord Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (applying Rule 9(b) to "averments of fraud, whether they are part of a claim for fraud or not").

"Although Rule 9(b) does not apply to negligent misrepresentation claims, [the Fifth Circuit] has applied the heightened pleading requirements when the parties have not urged a separate focus on the negligent misrepresentation claims." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (citing *WMX Techs., Inc.*, 112 F.3d at 177).  Because

Simien's fraud and negligent misrepresentation claims rely upon the same factual allegations, Rule 9(b) applies to Simien's negligent misrepresentation claim, as well.  *See WMX Techs., Inc.*, 112 F.3d at 177 (citing *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 n.5 (5th Cir. 1993)).

Accordingly, the court holds that Simien's claims for Strict Products Liability – Manufacturing Defect (Count I), Strict Products Liability – Information Defect (Count II), Strict Products Liability – Design Defect (Count III), Negligence – Design (Count IV), Negligence – Manufacture (Count V), Negligence – Failure to Warn (Count VII), and Negligence Per Se (Count IX) must meet the Rule 8(a) pleading standard, whereas his claims for Negligent Misrepresentation (Count VIII), Fraudulent Misrepresentation (Count XII), Fraudulent Concealment (Count XIII), and relief under the DTPA (Count XIV) must meet the Rule 9(b) heightened pleading standard. The court will address each count individually.

### C.   Claims Subject to Rule 8(a) Pleading Requirements

#### 1.   Strict Products Liability

Texas has adopted Section 402A of the Restatement (Second) of Torts providing for strict liability for the sale of dangerously defective products.  *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 772 (5th Cir. 2018); *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 402 (Tex. 2008); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967).  A manufacturer who places into the stream of commerce a dangerous product by reason of some defect is strictly liable to one who sustains injury because of the defect.  *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex. 1969); *see New Tex. Auto Auction Servs., L.P.*, 249 S.W.3d at 403.  The essential elements of a strict products liability claim are:

(1) a product defect;

(2) that existed at the time the product left the manufacturer's hands;

(3) the defect made the product unreasonably dangerous; and

(4) the defect was a producing cause of the plaintiff's injuries.

*Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 352 (Tex. 2015) (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)); *see Casey v. Toyota Motor Eng'g & Mfg. N.A., Inc.*, 770 F.3d 322, 326 (5th Cir. 2014); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006).

a.      Strict Products Liability – Manufacturing Defect (Count I)

Under Texas law, "[a] manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous." *Gharda USA, Inc.*, 464 S.W.3d at 352 (quoting *Ridgway*, 135 S.W.3d at 600); *see Casey*, 770 F.3d at 326; *Cofresi v. Medtronic, Inc.*, No. 5:19-CV-1222-DAE, 2020 WL 1887862, at *4 (W.D. Tex. Mar. 30, 2020); *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 540 (Tex. 2011); *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 46 n.16 (Tex. 2007) (quoting *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997)).

To plead a manufacturing defect claim adequately, a plaintiff must allege more than the mere fact of a product-related accident. *Elmazouni v. Mylan, Inc.*, 220 F. Supp. 3d 736, 741 (N.D. Tex. 2016) (holding that Plaintiffs' claiming a manufacturing defect because "[the product] malfunctioned" and "did not perform as intended or designed" was insufficient under Rule 12(b)(6) standards); *see Cofresi*, 2020 WL 1887862, at *4 (holding that the plaintiff failed to plead a manufacturing defect when he contended that the entire design of the product was defective);

12

*McAndrews v. C.R. Bard, Inc.*, No. H-14-2504, 2015 WL 2089432, at *2 (S.D. Tex. May 5, 2015) ("Plaintiff's complaint does not allege any defect from specifications or planned output."); *Eckhardt v. Qualitest Pharm. Inc.*, 858 F. Supp. 2d 792, 800 (S.D. Tex. 2012) ("The Court finds that the complaint contains no more than conclusory allegations that there was a manufacturing defect.").

Here, Simien alleges that Bard deviated from the original design or specifications when it manufactured the G2 filters; specifically, the G2 filters exhibited "draw markings" and circumferential grinding marking on the exterior of their surfaces which compromised their structural integrity while in vivo. Simien further alleges that this defect existed when the product left Bard's hands, made the product unreasonably dangerous, and caused him injuries. Thus, the court finds that Simien's claim for Strict Products Liability – Manufacturing Defect (Count I) is sufficiently pleaded.

> ### b.   Strict Products Liability – Information/Marketing Defect (Count II)

"The Texas Supreme Court has explained that 'a defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. . . . Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product.'" *Smith v. Robin Am., Inc.*, 484 F. App'x 908, 912 (5th Cir. 2012) (quoting *Grinnell*, 951 S.W.2d at 426); *see Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 377 (Tex. 1985). Under Texas law, "[t]o prevail on their marketing-defect claims, plaintiffs [must] show (a) the warning was defective and (b) the defect was a producing cause of the injury." *In re DePuy Orthopaedics, Inc.*, 888 F.3d at 772 (citing *Ackermann v. Wyeth Pharm.*, 526 F.3d 203, 208 (5th Cir. 2008)); *accord Hale*

*v. Metrex Research Corp.*, 963 F.3d 424, 428 (5th Cir. 2020).   Unless a warning specifically mentions the circumstances complained of, then the adequacy of a warning is a question of fact for the jury.   *Hale*, 963 F.3d at 428; *In re DePuy Orthopaedics, Inc.*, 888 F.3d at 772; *McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006) ("Texas law generally holds that the adequacy of a product's warning is a question of fact to be determined by the jury); *Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 592 (Tex. 1986) (recognizing that the sufficiency of a warning is a question of fact to be determined by the jury).

   "Generally, a manufacturer has a duty to warn if it knows or should know of the potential harm to a user because of the nature of its product."   *Cofresi*, 2020 WL 1887862, at *4 (quoting *Grinnell*, 951 S.W.2d at 426); *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex. 1978); *Wood v. Phillips Petroleum Co.*, 119 S.W.3d 870, 873 (Tex. App.—Houston [14th] 2003, pet. denied).   Harms of which a manufacturer should be aware include those that are "reasonably foreseeable or scientifically discoverable at the time the product is sold."   *Wood*, 119 S.W.3d at 873 (citing *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1088 (5th Cir. 1973)). Moreover, a manufacturer has a duty to instruct its users on the safe use of its product, which means that it must "not only keep abreast of scientific knowledge, discoveries, and advances, but, more importantly, test and inspect its product."   *Wood*, 119 S.W.3d at 873 (citing *Borel*, 493 F.2d at 1089-90).   Liability for failure to warn is imposed where a manufacturer does not exercise reasonable care in discovering and warning of a given danger.   *Id*. at 873 n.6.   A manufacturer, however, is not liable for a failure to warn of dangers that were unforeseeable at the time the product was marketed.   *Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd.*, 299 S.W.3d 374,

384 (Tex. App.—Tyler 2009, pet. denied); *USX Corp. v. Salinas*, 818 S.W.2d 473, 482 (Tex. App.—San Antonio 1991, writ denied).

"Nevertheless, . . . there is no duty to warn when the risks associated with a particular product are matters 'within the ordinary knowledge common to the community.'" *Grinnell*, 951 S.W.2d at 426 (quoting *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex. 1991)); *accord Young v. Cintas Corp. No. Two*, 786 F. App'x 466, 466 (5th Cir. 2019); *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 521 (5th Cir. 2001); *Robins v. Kroger*, 982 S.W.2d 156, 160 (Tex. App.—Houston [1st] 1998, pet. denied).   "[T]he law of products liability does not require a manufacturer or distributer [sic] to warn of obvious risks." *Shears*, 911 S.W.2d at 382; *see Emerson Elec. Co. v. Johnson*, 601 S.W.3d 813, 826 (Tex. App.—Fort Worth 2018, no pet.); *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 880 (Tex. App.—Fort Worth 2002, no pet.).   "A number of courts have observed that a warning that merely states the obvious would accomplish very little and to the contrary may actually be counterproductive." *Shears*, 911 S.W.2d at 382.

Here, Simien asserts that Bard knew or should have known that the G2 filter was susceptible to fatigue, failure, and migration.   Moreover, Simien claims that Bard's warnings and directions failed to warn adequately of these potential risks and side effects.   Simien further asserts that Bard failed to provide a "Black Box Warning" that stated:   "The safety and effectiveness of the Recovery Filter System in morbidly obese patents has not been established.   There have been fatal device-related adverse events reported in this population [and] [C]entral venous lines may cause the filters to move or fracture."   Simien maintains that the lack of sufficient instructions or warnings caused his injuries.   Thus, the court finds that Simien's cause of action for Strict Products Liability – Information/Marketing Defect (Count II) is sufficiently pleaded.

c.      Strict Products Liability – Design Defect (Count III)

"The duty to design a safe product is 'an obligation imposed by law.'"   *Grinnell*, 951

S.W.2d at 426 n. l (quoting *McKisson*, 416 S.W.2d at 789); *accord Jackson v. Black & Decker*

*(US), Inc.*, No. 4:06-CV-190-Y, 2008 WL 11349747, at *6 (N.D. Tex. Mar. 10, 2008).   To

recover on a design defect claim in Texas, a plaintiff must show:  (1) the product was defectively

designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3)

the defect was the producing cause of the injury for which the plaintiff seeks recovery.  *Emery v.*

*Medtronic, Inc.*, 793 F. App'x 293, 295 (5th Cir. 2019); *In re DePuy Orthopaedics, Inc.*, 888

F.3d at 765 (quoting *Casey*, 770 F.3d at 330); *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d

1034, 1040 (5th Cir. 2011); *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 6 (Tex. 2015) (citing

*Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009)).

In his Amended Complaint, Simien alleges that the G2 filters were designed in a manner

that presented an unreasonable risk that portions of the filters would fracture; that the filters or

portions of the filter would migrate; and that the filters would tilt and/or perforate the vena cava

wall.  Simien also asserts that the G2 filter's design causes it to be of insufficient integrity and

strength to withstand normal stresses within the human body.  Simien alleges that, at the time Bard

was selling the G2 filter, safer alternative designs were available; for example, Simien states that

Bard was also selling a predecessor device—the "SNF"[2]—which "had the same indication for use

with nearly zero adverse events."  Simien further states that as a direct and proximate result of the

---

[2] Although not defined in the Amended Complaint, "SNF" apparently stands for Simon Nitinol
Filter.

defective and unreasonably dangerous condition of the G2 filter, he suffered injuries and damages.

Therefore, Simien adequately pleads a claim for design defect.

      2.   <u>Negligence</u>

Under Texas law, a negligence claim consists of four essential elements:

(1) a legal duty owed to the plaintiff by the defendant;

(2) a breach of that duty;

(3) an actual injury to the plaintiff; and

(4) a showing that the breach was the proximate cause of the injury.

*Eckhardt*, 751 F.3d at 681 (quoting *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006)); *see Milligan v. Home Depot USA, Inc.*, 809 F. App'x 217, 219 (5th Cir. 2020); *Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432, 443 (5th Cir. 2010); *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540-41 (5th Cir. 2005); *Gharda USA, Inc.*, 464 S.W.3d at 352; *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013).   "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018) (quoting *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)); *Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017).  If the defendant owed no duty, it cannot be found liable for negligence.  *See Allen*, 907 F.3d at 180; *Boudreaux*, 402 F.3d at 542 n.19.

A negligence claim is a distinct cause of action from a strict products liability claim. *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 431 (5th Cir. 2001); *Grinnell*, 951 S.W.2d at 437; *Shears*, 911 S.W.2d at 384; *Gonzales v. Caterpillar Tractor Co.*, 571 S.W.2d 867, 871-72 (Tex. 1978).  As the Texas Supreme Court has explained:

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action.  Strict liability looks at the product itself and determines if it is defective.  Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.

*Gonzales*, 571 S.W.2d at 871; *accord Shears*, 911 S.W.2d at 384.  Whether a negligence claim fails following a finding of no strict products liability depends on the type of negligence asserted.  When a negligence claim is premised solely on a defect in the product and the evidence is "directed entirely to the issue of whether the product was unreasonably dangerous," a finding that the product is not unreasonably dangerous is inherently a finding that the product was not negligently designed.  *Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257 (5th Cir. 1988) (finding that "a defective product theory subsumes a negligent manufacturing [and design] theory"); *see Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 750 (5th Cir. 2018) ("[A]ppellants alleged no negligence other than conduct relating to whether the [product] was unreasonably dangerous when sold.  As a result, appellants' negligence theories are encompassed and subsumed in their defective product theories, and appellants' burden at trial would be to prove injury resulting from a product defect." (quoting *Shaun T. Mian Corp. v. Hewlett-Packard Co.*, 237 S.W.3d 851, 857 (Tex. App.—Dallas 2007, pet. denied))); *Transcorp Carriers, Inc. v. Great Dane Ltd. P'ship*, 5:12CV88, 2013 WL 5230821, at *14 (E.D. Tex. Sept. 17, 2013) (holding "the failure of Plaintiff's strict liability claim precludes Plaintiff's negligence claim"); *Hayles v. Gen. Motors Corp.*, 82 F. Supp. 2d 650, 658-59 (S.D. Tex. 1999) (stating that "the absence of a defect negated an essential element of a negligence claim").  The Fifth Circuit, in *Garrett*, explained:

> Thus, although a negligence claim requires a different showing from a strict liability claim, a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective because:  (1) if a product is not unreasonably dangerous because of the way it was manufactured, it

was not negligent to manufacture it that way and (2) even if the manufacturer was somehow negligent in the design or production of the product, that negligence cannot have caused the plaintiff's injury because the negligence did not render the product "unreasonably dangerous."

850 F.2d at 257.   When a plaintiff's allegations and evidence are directed to whether a product is defective and no other potentially negligent conduct is alleged, the duty and breach analysis is subsumed into an inquiry of whether a product is "unreasonably dangerous."  *Id.* at 256; *Ford Motor Co. v. Miles*, 141 S.W.3d 309, 315 (Tex. App.—Dallas 2004, pet. denied); *see Shears*, 911 S.W.2d at 384 (holding that unlike a products liability-based design defect claim, which focuses on the product itself, a design defect claim based on negligence focuses on the actions of the manufacturer).

"Under Texas law, a manufacturer may be held liable for harm, if that manufacturer negligently manufactures a product which, unless carefully made, involves an unreasonable risk of causing harm to those who use it for its intended purpose and to those whom the manufacturer should expect to be endangered by its probable use."  *Syrie v. Knoll Int'l*, 748 F.2d 304, 310-11 (5th Cir. 1984); *see Gonzales*, 571 S.W.2d at 871; *accord Nester v. Textron, Inc.*, No. 1:13-cv-920-DAE, 2015 WL 9413891, at *14 (W.D. Tex. Dec. 22, 2015) ("A designer and manufacturer has a duty to inform users of hazards associated with the use of its products." (citing *Alm*, 717 S.W.2d at 591)); *Seifried v. Hygenic Corp.*, 410 S.W.3d 427, 431-32 (Tex. App.—Houston [1st Dist.] 2013, no pet.).   A failure to warn claim will not necessarily fail in the absence of an alternative design.  *See Garrett*, 850 F.2d at 857 (noting that "additional negligence theories, such as failure to warn" may not be "encompassed by the strict liability theory submitted").  Nonetheless, "Texas courts consistently recognize that plaintiffs are not entitled to simply 'restat[e] the design defect claim' as a marketing defect claim" or a negligent failure to warn

claim.  *Mack v. Deer & Co.*, No. 3:12-CV-00296, 2013 WL 5945079, at *3 (S.D. Tex. Nov. 6,

2013) (quoting *Hernandez v. Ford Motor Co.*, No. C.A.No.C-04-319, 2005 WL 1693945, at *1-2

(S.D. Tex. July 20, 2005)).

### a.   Negligent Design and Manufacture (Counts IV and V)

Simien alleges that Bard had a duty to design and manufacture an IVC filter that is safe,

claims that Bard breached that duty by designing and manufacturing the G2 filter in a manner that

presented an unreasonable risk of injury, asserts that the SNF was a safer alternative design, and

alleges that he suffered injuries as a direct and proximate result of Bard's alleged negligently

designed and manufactured G2 filter.  Thus, the court finds that Simien's claims for Negligent

Design and Manufacture (Counts IV and V) are sufficiently pleaded.

### b.   Negligent Failure to Warn (Count VII)

In the instant case, Simien alleges that Bard had a duty to warn of the dangers presented

by the G2 filters and that reasonable manufacturers and distributors in the same industry would

have warned of these dangers.  Simien further alleges that he suffered injuries as a direct and

proximate result of Bard's breach of its duty to warn.  Thus, the court finds that Simien's claim

(Count VII) for Negligence – Failure to Warn is sufficiently pleaded.

### 3.   Negligence Per Se (Count IX)

Under Texas law, "[n]egligence per se is a tort concept whereby a legislatively imposed

standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent

person." *Bass v. Stryker Corp.*, 669 F.3d 501, 514 (5th Cir. 2012) (quoting *Carter v. William

Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979)); *Allen*, 907 F.3d at 178.  To

establish negligence per se, a plaintiff must prove, in part, that "the defendant's act or omission

is in violation of a statute or ordinance." *Ybarra v. Ameripro Funding, Inc.*, No.

01-17-00224-CV, 2018 WL 2976126, at *9 (Tex. App.—Houston [1st Dist.] June 14, 2018, pet.

denied).  "In such a case the jury is not asked to judge whether or not the defendant acted as a

reasonably prudent person would have acted under the same or similar circumstances; the statute

itself states what a reasonably prudent person would have done." *Bass*, 669 F.3d at 514 (quoting

*Carter*, 584 S.W.2d at 278).

Here, Simien alleges that Bard was negligent per se because it violated the Food and Drug

Cosmetic Act ("FDCA") and various Food and Drug Administration ("FDA") regulations.[3]

"Texas courts . . . refuse to recognize a cause of action for negligence per se based on violations

of the [FDCA] and FDA regulations." *Sweezey v. C.R. Bard Inc.*, No. 3:19-CV-2172-S, 2020

WL 1237394, at *1 (N.D. Tex. Mar. 12, 2020); *Monk v. Wyeth Pharm., Inc.*, No.

SA-16-CV-1273-XR, 2017 WL 2063008, at *8 (W.D. Tex. May 11, 2017) (dismissing plaintiff's

negligence per se claims because "Texas law does not recognize a cause of action for negligence

per se based on alleged violations of the FDCA"); *Holland v. Hoffman-La Roche, Inc.*, No. 3-06-

CV-1298-BD, 2007 WL 4042757, at *3 (N.D. Tex. Nov. 15, 2007); *Jackson v. Tae Jin Kim*, No.

2:02-CV-200, 2004 WL 6040969, at *4 (E.D. Tex. Sept. 27, 2004); *Hackett v. G.D. Searle &

Co.*, 246 F. Supp. 2d 591, 594, 2002 WL 31966451 (W.D. Tex. 2002).  Accordingly, Simien's

negligence per se claim is dismissed, as it is not recognized in this context under Texas law, which

is the controlling law in this diversity case. *Gonzalez v. Mid-Continent Cas. Co.*, No. 19-10565,

2020 WL 4696766, at *1 (5th Cir. Aug. 13, 2020) ("Because [Plaintiff] brings claims under Texas

---

[3] Simien alleges Bard violated the following statutes and regulations:  21 U.S.C. §§ 321, 331, and 352; and 21 C.F.R. §§ 1.21, 201.128, 801.4, 801.109, 803, 807, and 820.

law in this diversity-jurisdiction case, we apply the substantive law of Texas."); *see Smit v. SXSW Holdings, Inc.*, 903 F.3d 522, 529 (5th Cir. 2018) (applying Texas negligence per se rules in a diversity suit).

     D.     <u>Claims Subject to Rule 9(b) Pleading Requirements</u>

          1.     <u>Fraudulent Misrepresentation (Count XII) and Fraudulent Concealment (Count XIII)</u>

In Texas, common law fraud may consist of an affirmative misrepresentation or, in certain circumstances, the concealment or non-disclosure of a material fact.  To recover for fraud through affirmative misrepresentation, the plaintiff must establish that:

(1)     the defendant made a material representation concerning an existing fact;

(2)     the representation was false when it was made;

(3)     the speaker knew the misrepresentation was false, or made it recklessly without knowledge of its truth and as a positive assertion;

(4)     the speaker made the misrepresentation with the intent that it should be acted upon;

(5)     the plaintiff acted with justifiable reliance on the misrepresentation; and

(6)     the plaintiff suffered injury as a result.

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 218 (5th Cir. 2018); *Harris Cty. Tex. v. MERSCORP Inc.*, 791 F.3d 545, 558 (5th Cir. 2015); *Massey v. EMC Mortg. Corp.*, 546 F. App'x 477, 481 (5th Cir. 2013); *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 212; *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).  "Fraud is never presumed, and it is plaintiff's burden to allege and prove actionable fraud."  *William B. Roberts, Inc. v. McDrilling Co.*, 579 S.W.2d 335, 339 (Tex. Civ.

App.—Corpus Christi 1979, no writ); *accord Priddy v. Rawson*, 282 S.W.3d 588, 598 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *see IAS Servs. Grp., L.L.C.*, 900 F.3d at 647.

While Simien makes conclusory allegations of false representations and omissions, he does not indicate the specific statements at issue, the individuals who made or concealed the statements, designate the dates on which such representations or omissions took place, or identify the place at which they occurred. *See Doe*, 343 F.3d at 329. Rather, he generally states that "at all times relevant to this cause," Bard provided "Plaintiff, Plaintiff's physicians, the medical community, and the public at large," with misrepresentations regarding a list of six topics that concern all of Bard's IVC filers and are not limited to the G2 filter.[4] This clearly fails to meet the heightened pleading standard under Rule 9(b).

In short, Simien's allegations are too vague and imprecise to state a claim for fraudulent misrepresentation or fraudulent concealment under Rule 9(b). *See McCrimmon v. Wells Fargo Bank, N.A.*, 516 F. App'x 372, 375 (5th Cir. 2013) (finding that the plaintiff's pleadings did not meet the heightened standard because they "contain[ed] no specific statements made or omitted, no identified speakers, no times or places, and no explanation of why the statements were

---

[4] Simien lists the six topics, as follows:  (a) Failing to provide adequate instruction that a manufacturer exercising reasonable care would have provided concerning the likelihood that Bard IVC filters would cause harm; (b) Manufacturing and/or selling Bard IVC filters when those filters did not conform to representations made by Bard when they left Bard's control; (c) Manufacturing and/or selling Bard IVC filters that were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner; (d) Manufacturing and/or selling Bard IVC filters that carried foreseeable risks associated with the Bard IVC filter design or formulation which exceeded the benefits associated with that design; (e) Manufacturing and/or selling Bard IVC filters when they deviated in a material way from the design specifications, formulas, or performance standards or from otherwise identical units manufactured to the same design specifications, formulas, or performance standards; and (f) Impliedly representing that its filters would be effective in the prevention of pulmonary emboli.

fraudulent").   The court concludes that Count XII is not pleaded sufficiently and, thus, is dismissed.

### 2.      Negligent Misrepresentation (Count VIII)

Courts may hold negligent misrepresentation claims pleaded in conjunction with claims of fraud to the same Rule 9(b) pleading standard.  *Benchmark Elecs., Inc.*, 343 F.3d at 723 (citing *WMX Techs., Inc.*, 112 F.3d at 177).   Simien's negligent misrepresentation claim is pleaded insufficiently because he fails to identify specifically to whom the alleged misrepresentations were made, the content of the statements, and how the statements were made.   Simien's Amended Complaint merely states that Bard made representations concerning the safety, fit, and effectiveness of all of Bard's filters to "Plaintiffs [sic], Plaintiffs' [sic] treating physicians, and the general public," by way of "published labels, labeling, marketing materials, and otherwise."   This fails to meet Rule 9(b)'s requirement that the complaint set forth the "'who, what, when, where, and how' of the events at issue."   *See Dorsey*, 540 F.3d at 338-39 (quoting *Tchuruk*, 291 F.3d at 350)).   Thus, the court finds Simien's cause of action for negligent misrepresentation (Count VIII) to be pleaded insufficiently and, therefore, it is dismissed.

### 3.      Plaintiff's Claim for Personal Injury Under the DTPA (Count XIV)

Simien's claim for relief under the DTPA also falls short of the Rule 9(b) pleading standard.  *See Patel*, 172 F. Supp. 2d at 825 (holding that claims alleging violations of the DTPA are subject to the requirements of Rule 9(b)).   Here Simien alleges that Bard "knowingly, deliberately, willfully and/or wantonly engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of all states' consumer protection laws."   Simien then lists several generic ways in which Bard's conduct surrounding all of its IVC filters—not just the

G2 filter—was purportedly deceptive.  Simien does not adequately articulate Bard's alleged breach

of the DTPA with respect to the G2 filter.  Simien has specified neither his injury, his medical

expenses, nor the lost wages he has suffered as a result.  Thus, the court finds that Simien fails

to state a claim for relief under the DTPA.  Accordingly, Count XIV is dismissed.

      E.     <u>Motion to Strike</u>

      A motion to strike is authorized by Rule 12(f) of the Federal Rules of Civil Procedure,

which provides:

> The court may strike from a pleading an insufficient defense or any redundant,
> immaterial, impertinent, or scandalous matter.  The court may act:
>
> (1) on its own; or
>
> (2) on motion made by a party either before responding to the pleading or, if a
> response is not allowed, within 21 days after being served with the pleading.

FED. R. CIV. P. 12(f).  "Immaterial matter is that which has no essential or important relationship

to the claim for relief or the defenses being pleaded . . . .  [I]mpertinent matter consists of

statements that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc.*

*v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010); *Williams v. Averitt Express*, No.

8:15CV464, 2016 WL 589861, at *2 (D. Neb. Feb. 11, 2016); *Brady v. Basic Research, L.L.C.*,

101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015).  A motion to strike "serves to 'avoid the expenditure

of time and money that must arise from litigating spurious issues by dispensing with those issues

prior to trial.'" *Blount v. Johnson Controls, Inc.*, 328 F.R.D. 146, 148 (S.D. Miss. 2018)

(quoting *Zytax, Inc. v. Green Plains Renewable Energy, Inc.*, No. H-09-2582, 2010 WL 2219179,

at *5 (S.D. Tex. May 28, 2010)).

"The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." *Veranda Assocs., L.P. v. Hooper*, 496 F. App'x 455, 458 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, 306 F.2d 862, 868 (5th Cir. 1962)); *Gilchrist v. Schlumberger Tech. Corp.*, 321 F.R.D. 300, 302 (W.D. Tex. 2017). Hence, allegations that "are so unrelated to plaintiffs' claims as to be unworthy of any consideration" should be stricken. *Sw. Insulation, Inc. v. Gen. Insulation Co.*, No. 4:15-CV-601-O, 2016 WL 9244825, at *2 (N.D. Tex. June 29, 2016) (quoting *F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993)).

### 1.   Punitive Damages

A motion to strike a claim for punitive damages is appropriate when the law does not permit their recovery under the cause of action asserted by the plaintiff. *Hughes v. Gueydan Police Dep't*, No. 6:10-1570, 2011 WL 1303822, at *2 (W.D. La. Mar. 14, 2011) (motion to strike claim for punitive damages granted because punitive damages are not recoverable in a 42 U.S.C. § 1983 action against a municipality); *Benigno v. Flatley*, No. CIV. A. 01-CV-2158, 2002 WL 123360, at *1 (E.D. Pa. Jan. 29, 2002) (motion to strike claim for punitive damages granted because punitive damages are not available for breach of contract); *Bell v. Specialty Packing Prods., Inc.*, No. EP-92-CA-299-F, 1994 WL 468075, at *1 (W.D. Tex. June 29, 1994) (court granted motion to strike punitive damages claim under the ADEA because the Fifth Circuit had held such a claim not to be available under the Act).

Under Texas law, punitive damages may be awarded where "the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from:  (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV.

PRAC. & REM. CODE § 41.003.  Here, the court has dismissed Simien's claims for fraudulent misrepresentation and fraudulent concealment, which were his only claims that would allow recovery for punitive damages.  Simien's remaining causes of action for strict products liability and negligence do not seek recovery based on fraud, malice, or gross negligence.  Thus, Bard's motion to strike Simien's claim for punitive damages is granted.

2.     Bard's Other IVC Filters

Bard complains that Simien's Amended Complaint includes allegations regarding the quality of Bard's filters other than the G2 filter, which are immaterial to his case.  Specifically, all of Simien's causes of action refer to "Bard's IVC Filters," rather than specifically addressing the G2 filter at issue in this case.  The court agrees to the extent that Bard requests Simien's causes of action be tailored to the G2 filter.  Superfluous references to Bard's other products should be stricken.

III.    Conclusion

Accordingly, Bard's motion (#15) is GRANTED IN PART.  Simien's claims for Breach of Express Warranty (Count VI), Breach of Implied Warranty (Count X), and Failure to Recall/Retrofit (Count XI) are dismissed by agreement.  Simien's claims for Negligent Misrepresentation (Count VIII), Negligence Per Se (Count IX), Fraudulent Misrepresentation (Count XII), Fraudulent Concealment (Count XIII), and relief under the DTPA (Count XIV) are dismissed.  Bard's motion to strike Simien's claim for punitive damages is granted.  To the extent that Simien's remaining causes of action assert claims based on Bard's IVC filters, aside from the G2 filter, such references to other IVC filters are stricken.

SIGNED at Beaumont, Texas, this 20th day of August, 2020.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE